UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SARAH D. W.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:25-cv-00012-KMB-TWP |
| | ) |
| FRANK BISIGNANO, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Sarah D. W. applied for supplemental security income from the Social Security Administration ("SSA") on February 23, 2023, alleging an onset date of October 1, 2022. [Dkt. 8-1 at 13.] Administrative Law Judge William C. Grayson (the "ALJ") issued a decision on August 30, 2024, concluding that Sarah was not disabled and, therefore, not entitled to receive the requested benefits. [*Id.* at 26.] The Appeals Council denied her request for review on November 21, 2024. [Dkt. 13 at 2.] On January 23, 2025, Sarah timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1383(c)(3). [Dkt. 1.]

### I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under the deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations

omitted).   "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id*.  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[2]

Sarah was 39 years old when she applied for disability benefits.  [Dkt. 8-2 at 25.] The ALJ concluded that she had no past relevant work.  [*Id*. at 24.]

The ALJ followed the five-step evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and

---

[2] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

3

concluded that Sarah was not disabled. Specifically, the ALJ found as follows:

- At Step One, Sarah has not engaged in substantial gainful activity since February 23, 2023, the alleged onset date. [*Id*. at 15.]

- At Step Two, Sarah has the following severe impairments: degenerative disc disease of the lumbar spine, rheumatoid arthritis, polyarthralgia, lupus, fibromyalgia, liver disease, obesity, depression, and anxiety. [*Id*.]

- At Step Three, Sarah does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id*.]

- After Step Three but before Step Four, Sarah has the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant can understand and remember simple, routine tasks and sustain those tasks for 2 hours at a time throughout an 8-hour workday and can tolerate occasional interaction with the public and occasional changes to the routine work setting." [*Id.* at 19.]

- At Step Four, Sarah has no past relevant work. [*Id.* at 24.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Sarah's age, education, and RFC, there were jobs that existed in the national economy that Sarah could have performed through the date of the decision, including leaf tier, ampule sealer, and thread separator. [*Id.* at 25.]

### III. DISCUSSION

Sarah raises one issue for the Court's review: whether the ALJ committed reversible error by failing to submit new and potentially probative medical evidence to a medical expert for review. [Dkt. 13 at 1.] Framing this issue requires the Court to give some additional factual background before setting forth the Parties' arguments.

The state agency physician, Dr. Corcoran, reviewed medical records, including an MRI from May 4, 2023, in making his determination that Sarah was limited to sedentary work. [*Id.* at 7.] Records submitted after Dr. Corcoran's review included (1) treatment notes reviewing the MRI from Sarah's primary care provider, Nurse Practitioner Nash ("NP Nash"); and (2) a CT scan of Sarah's lumbar spine, which was completed on May 18, 2023. [*Id.* at 7-8.]

4

NP Nash's treatment notes state that the results from the MRI "looked the same as past imaging 'except for L3-L4 facet arthritis' with increased narrowing at that level." [*Id.* (quoting dkt. 8-7 at 373).] NP Nash suggested that Sarah follow up with her neurosurgeon. [Dkt. 13 at 7.] Sarah told NP Nash that her neurosurgeon recommended surgery on her back. [Dkt. 13 at 8; dkt. 8-7 at 309, 373.]

The medical records in this case do not include the treatment notes from Sarah's neurosurgeon but they do include the CT scan that her neurosurgeon ordered that was completed on May 18, 2023. [Dkt. 8-7 at 384-85.] This CT scan was produced in July 2024 shortly before Sarah's administrative hearing. [Dkt. 13 at 8.] The CT scan included additional information that was not present on the MRI. For example, unlike the MRI, the CT scan showed the previously installed hardware but also revealed a fractured right S1 pedicle screw. [*Id.*] The CT scan also showed *moderate to severe* right and mild left foraminal narrowing, whereas the MRI only showed *moderate* right and mild left foraminal narrowing at the L5-S1 level. [*Compare* dkt. 8-7 at 389 *with* dkt. 8-7 at 385.] No medical expert in the file reviewed the CT scan.

Sarah argues that the CT scan is potentially probative evidence that should have been reviewed by a medical expert. [Dkt. 13 at 8.] Specifically, she argues that the CT scan showed either that her condition had worsened since the MRI was conducted two weeks earlier, or alternatively, that she suffers from an altogether "objectively worse condition" than the MRI suggested. [*Id.*] Either way, she contends that her condition is worse than Dr. Corcoran found and precludes her from work. [*Id.*] Sarah argues that her case must be remanded because the CT scan is "new objective medical evidence requiring medical expert review" and that the ALJ erred in deciding that the imaging was "accounted for" by restricting Sarah to sedentary work. [*Id.* at 9.]

The Commissioner argues that the ALJ sufficiently articulated and supported his RFC assessment. [Dkt. 15.] The Commissioner points out that Dr. Corcoran viewed the lumbar MRI. [*Id.* at 8.] The Commissioner also claims that Sarah has not met her burden of production since she has not produced her neurosurgeon's treatment notes and therefore does not have support for the contention that he recommended surgery. [*Id.* at 8-9.] Because Sarah did not produce the neurosurgeon's records, the Commissioner argues that it is not clear if the neurosurgeon reviewed the CT scan, what his interpretation was, or what treatment he recommended. [*Id.* at 10.] Any contention that her neurosurgeon recommended surgery is "second and third-hand evidence and conjecture." [*Id.*] Furthermore, the Commissioner argues that there was no treatment change noted in the record after the CT scan, implicitly arguing that the CT scan could not have changed the evidence so much as to require the ALJ to seek an updated opinion. [*Id.* at 11-12.]

In reply, Sarah claims that the Commissioner's response offers contradictory statements, at one point stating that she did not change treatment course but then also stating that NP Nash recommended she follow up with her neurosurgeon. [Dkt. 16 at 2.] Sarah also argues that even if it would have been best for her attorney at the hearing to have obtained her neurosurgeon's records, the potentially probative evidence was produced ahead of the hearing and should have been considered since the ALJ has an independent duty to develop the record. [*Id.* at 4.] As for the credibility of the surgery recommendation, Sarah emphasizes that if the Court does not accept her assertion that the neurosurgeon recommended surgery, then the Court is left with no medical opinion about treatment or limitations after the CT. [*Id.* at 5.] Either way, the ALJ erred by failing to submit that new evidence for review by a medical expert.

The ALJ may not "interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (cleaned up). When

6

new information arises during the course of the administrative proceedings, the question of whether the ALJ should solicit an additional expert medical opinion hinges on whether the new information "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the subsequent] report," or whether the updated information was minor enough that the ALJ did not need to seek a second opinion. *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). "[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion." *Id.* at 888.

The Court agrees with Sarah that the ALJ here committed reversible error. The Commissioner places great emphasis on the fact that Dr. Corcoran, the state agency consultant, reviewed the MRI in this case, but it is undisputed that he did not review the CT scan taken two weeks after the MRI. The CT scan shows a "nondisplaced facture of the right S1 pedicle screw" and "moderate to severe right and mild left foraminal narrowing." [Dkt. 8-7 at 385.] The crack in the hardware was not seen on the MRI, and the MRI impression notes indicate only "moderate right and mild left foraminal narrowing" rather than "moderate to severe right and mild left foraminal narrowing." [Dkt. 8-7 at 389.] Thus, at the minimum, the CT scan shows what appears to be a material change in the presentation of Sarah's spine and lumbar area. Regardless of whether Sarah's neurosurgeon then recommended surgery, there is significant new medical imaging that was not evaluated by any medical expert in the record.

The Court is troubled by the lack of records from Sarah's neurosurgeon and recommends that these records be obtained and added to the medical record on remand for consideration. The lack of these records does not change the fact, however, that the state agency physician made his

recommendation as to Sarah's ability to work without reference to the subsequent CT scan but the ALJ still relied on the CT scan in his opinion denying benefits. [Dkt. 8-2 at 22.] The Court's decision to reverse primarily relies on the fact that this updated imaging needed to be reviewed by a physician to determine its possible impact on Sarah's ability to work. Because it was not, this case must be reversed and remanded for further proceedings.

### IV. CONCLUSION

For the reasons stated above, the Court **REVERSES** the decision denying Sarah benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4). Final judgment shall issue accordingly.

**SO ORDERED**.

Date: 10/14/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email